USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 23 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Christopher E. Dervan,

        Plaintiff,

—v—

Gordian Group LLC,

        Defendant.

16-CV-1694 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Christopher E. Dervan ("Plaintiff" or "Dervan") brings this diversity action against his former employer, Gordian Group LLC ("Defendant" or "Gordian"), asserting claims for breach of the parties' December 2010 severance agreement (the "Agreement") and unjust enrichment. On February 28, 2017, the Court granted Defendant's motion to dismiss in part, and denied the motion in part. *See Dervan v. Gordian Group LLC*, No. 16-CV-1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017). Before the Court is Plaintiff's motion for leave to file a Third Amended Complaint ("TAC"), which purports to cure the defects that resulted in partial dismissal. Dkt. No. 29.

For the reasons set forth below, Dervan's motion is GRANTED.

**I.    Background**

The Court assumes the parties' familiarity with the matter, the background of which is more fully described in the Court's February 28 Opinion & Order. *See Dervan*, 2017 WL 819494. For the purposes of the present motion, a brief summary of the underlying action, its

1

procedural history, and the Court's previous disposition will suffice.

### A. Factual Background

Dervan was employed by Gordian, an investment bank, as an Associate and then a Vice President from July 24, 2006 to December 17, 2010. Second Amended Complaint ("SAC"), Dkt. No. 17, ¶ 5. In connection with Dervan's departure from the firm, the parties entered into an agreement by which Gordian would continue to provide Dervan with certain monetary compensation and benefits following the termination of his employment. SAC Ex. 1 ("Agreement"), at 1. As relevant here, Paragraph 2 of the Agreement provides:

> If you [(Dervan)] choose to continue to work with us [(Gordian)] as an outside consultant in regards to Thermacell through the closing of any transaction that generates a fee, then you will be entitled to 25% of any such fees received by us.

SAC ¶ 7; Agreement ¶ 2. The Agreement does not expressly require Dervan to maintain or acquire any license or other regulatory authority or clearance in connection with performing any of the "work" referenced in Paragraph 2. *See generally* Agreement; *see also* SAC ¶ 15.

Following the termination of his employment, Dervan did in fact choose to work as an outside consultant to Gordian with regard to "Thermacell," which is alleged to refer to "certain technology and related products and businesses using that technology then owned by The Schawbel Corporation." *Id.* ¶¶ 7-8. Dervan alleged that in his capacity as an outside consultant he provided "valuable services, as appropriate and as requested by Defendant." *Id.* ¶¶ 8-9. The SAC does not otherwise describe Dervan's services in any great detail.

During the course of his post-termination work for Gordian, Dervan was not registered as a broker-dealer under Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") or otherwise registered in any way with the Financial Industry Regulatory Authority

2

("FINRA"). *Id.* ¶ 16.

Dervan's work ultimately helped Gordian to close a transaction related to Thermacell in approximately July 2014 by which an entity affiliated with the private equity firm Kinderhook Industries acquired The Schawbel Corporation's "Thermacell Mosquito business" (the "Thermacell Transaction"). *Id.* ¶¶ 9-10. Dervan demanded that Gordian pay him twenty-five percent of the alleged $1.25 million fee Gordian received upon closing of the transaction, but Gordian refused. *Id.* ¶¶ 11, 13.

Dervan initiated this action on March 5, 2016, asserting claims for breach of contract and unjust enrichment. Dkt. No. 1.

### B. Motion to Dismiss

On June 6, 2016, Gordian moved to dismiss Dervan's SAC in its entirety, arguing principally (i) that the SAC inadequately pleaded Dervan's own performance under the Agreement, (ii) that Dervan's failure to register with FINRA rendered enforcement of the Agreement's terms illegal, thereby precluding both a breach of contract claim and an unjust enrichment claim arising from the same facts, and (iii) that the unjust enrichment claim was, in any event, impermissibly duplicative. *See* Dkt. No. 20.

The Court was unpersuaded by the second and third arguments and denied the motion to dismiss the unjust enrichment claim, but the Court did dismiss Dervan's breach of contract claim. *Dervan*, 2017 WL 819494, at *12. Gordian had argued that the SAC failed to adequately plead Dervan's own performance under the Agreement. *Id.* at *2. Dervan countered that his performance was a "condition precedent" to suit that only had to be "allege[d] generally." *Id.* at *3. The Court held that "the occurrence or performance of a condition precedent – to the extent

3

that it need be pled as a required element of a given claim – must be plausibly alleged in accordance with Rule 8(a)." *Id.* at *6. Accordingly, applying the standard set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court found that "Dervan has failed to plausibly allege his own performance under the Agreement." *Id.*

In the SAC, Dervan had only pleaded as to the performance of his obligations that "(i): since his termination he 'has chosen to work with Defendant as an outside consultant in regard to Thermacell'; (ii) in that capacity, he 'provided valuable services'; (iii) the 'Thermacell engagement' (a term that is not defined in the SAC) 'resulted in the closing' of the Thermacell Transaction; and (iv) that '[a]ll conditions precedent to Defendant's contractual obligation to pay Plaintiff' under the Agreement 'have occurred.'" *Id.* (quoting SAC ¶¶ 8-10, 20). The Court held that these "'threadbare' and, at least in part, conclusory statements do not provide the 'sufficient factual matter' required for the Court 'to draw the reasonable inference' that Dervan performed the sort of work that would entitle him to payment under the Agreement." *Id.* (quoting *Iqbal*, 556 U.S. at 678). As a result of these deficiencies, the Court granted Defendant's motion to dismiss Dervan's breach of contract claim.

Three weeks after the Court issued its decision dismissing Dervan's breach of contract claim, Dervan filed the present motion for leave to file a Third Amended Complaint, purportedly curing the defects outlined above. Dkt. No. 29.

## II. Discussion

### A. Standard of Review

As Plaintiff has already filed two amended complaints, further amendment is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that a party may amend its pleading

4

"only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although under this Rule courts generally should "freely give leave when justice so requires, there are times when granting such leave may be inappropriate." *Duckett v. Williams*, 86 F. Supp. 3d 268, 275 (S.D.N.Y. 2015) (internal quotation marks, citation, and brackets omitted). The Court "has broad discretion in deciding whether or not to grant such a request." *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010) (citations and quotation marks omitted). Factors relevant to the Court's discretion include: (1) the presence of bad faith, dilatory motives, or undue delay on the part of the movant; (2) the movant's repeated failure to cure deficiencies by amendments previously allowed; (3) the potential for undue prejudice to an opposing party; and (4) whether the sought-after amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Most relevant here, a motion to amend may be denied as futile if the "amended portion of the complaint would fail to state a cause of action." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F. 3d 229, 244 (2d Cir. 2007) (a proposed amendment must be "sufficient to withstand a motion to dismiss under 12(b)(6)"). Thus, the proposed amendment "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

Unless amendment is clearly futile, "this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam). If a court finds that amendment may cure the defect that resulted in dismissal, leave to amend should normally be granted. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Metro. Life Ins. Co. v. Sicoli & Massaro Inc. Pension Trust*, No. 15-CV-7141(PGG), 2016 WL 5390899, at *9 (S.D.N.Y. Sept. 26, 2016). By contrast, "[s]hould the proposed [amended pleading] fail to cure these deficiencies, leave to amend will be denied as futile." *New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605(JFK), 2017 WL 1437204, at *3 (S.D.N.Y. Apr. 21, 2017) (citing *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990)).

### B. Plaintiff Sufficiently Cures the Deficiencies, and Amendment Would Not Be Futile

Plaintiff argues that his proposed Third Amended Complaint would cure the defect relied upon by the Court in dismissing his breach of contract claim. Dkt. No. 29 ¶ 13. Specifically, Dervan points to paragraphs 9 and 10, and exhibits 2 and 3, of his proposed Third Amended Complaint (which is attached to the motion), as specific facts that, if proven, "would establish Plaintiff's performance under the Agreement." *Id.* ¶¶ 13-14. Exhibit 3 is a series of email threads showing Dervan's involvement in discussions regarding Thermacell from December 2010 through September 2012. Exhibit 2 is an email Dervan sent to Peter Kaufman at Gordian Group on June 9, 2014 asking for the "latest on ThermaCELL," indicating that Dervan has "chosen to work as an outside consultant" and remains "committed…to helping get Bill to his desired outcome" and offering to "provide any advice to help towards that end." Paragraphs 9 and 10 summarize the services Dervan provided, as reflected in the attached emails, including,

but not limited to, "[p]roviding advice to Gordian and the client regarding all aspects of a potential transaction relating to Thermacell from late 2010 through 2012," "[d]irectly preparing numerous documents, presentations, summaries and other written materials relating to Thermacell," and "[r]eviewing and commenting on...written materials prepared by others relating to Thermacell."

Gordian, in opposing Plaintiff's motion for leave to amend, argues that these proposed additions do not cure the pleading deficiencies identified by the Court. Dkt. No. 36 at 1. Among other arguments Gordian makes, the Defendant highlights that Dervan's additional pleadings do not show how he worked for Gordian "through the closing of any transaction," as his termination agreement with Gordian provides. *Id.* at 3-4. The details alleged in paragraphs 9 and 10 of the proposed Third Amended Complaint date to time periods "well before the closing of the transaction involving Thermacell, which, according to the draft Third Amended Complaint, occurred on July 3, 2014." *Id.* at 4.

While the Court agrees that Dervan has not offered details about the services he rendered between 2012 and the closing in 2014, this does not render amendment futile. If it were clear what was intended by the words of the contract – "work[ing] with [Gordian] as an outside consultant in regards to Thermacell through the closing of any transaction" – in terms of the expectations of what Dervan would have to do to have fully performed, amendment may well have been futile.[1] Alternatively, were there clear evidence that Gordian attempted to continue to

---

[1] Although, Defendant's interpretation of this language – that it requires Dervan to work on the Thermacell transaction consistently through July 3, 2014 in order to have performed under the Agreement – might compel an absurd result. This would allow Gordian, hypothetically, to stop engaging Dervan in late June of 2014 and then deny him his fee for not performing "through the closing" without having breached the Agreement. *See Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*, 43 N.Y.S.3d 267, 269 (N.Y. App. Div. 2016) (stating that under New York law, a contract should not be interpreted in a way that would "place one party at the mercy of the

engage Dervan's services as a consultant, and that he refused or otherwise stopped performing without excuse, amendment may have been futile.[2] However, at this early juncture, the Court cannot adopt a specific interpretation of the contract without allowing the parties to develop the record with respect to the parties' understanding and intent when forming the Agreement. Rather, "[o]n a motion to dismiss a breach of contract claim, 'we should resolve any contractual ambiguities in favor of the plaintiff.'" *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)); *accord Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings."). Drawing all inferences in Plaintiff's favor and accepting all well-pleaded allegations as true, as the Court must, Dervan plausibly alleges his performance under the terms of the Agreement.[3]

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under the liberal standard of Rule 15(a)(2), and given the additions Dervan has made to cure the deficiencies noted in the Court's February 28 Opinion,

---

other" (internal quotation marks and citation omitted)).

[2] Defendant's attempt to imply this, by asserting that Dervan failed to register with FINRA despite Defendant's instructions that he would need to, *see* Dkt. No. 36 at 8 (citing Ex. 4), is insufficient. An alternative inference might be that Dervan failed to re-register with FINRA after this prodding email because his services were not further engaged by Gordian.

[3] Defendant also argues that Dervan's "undue delay" provides an independent basis for denying his motion for leave to amend. Dkt. No. 36 at 8. This argument is unavailing, as Dervan moved to amend within three weeks of the Court's February 28 Opinion noting these deficiencies.

leave to amend is warranted.

III. **Conclusion**

For the foregoing reasons, Dervan's motion to amend is GRANTED. The Court will schedule an initial pretrial conference by separate order.

This resolves Dkt. No. 29.

SO ORDERED.

Dated: October 23, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge